**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF AMERICA, ) ) ) Plaintiff, ) ) vs. ) ) WENDY MACADANGDANG *as Special Administrator on behalf of the Estate of* DANNY MACADANGDANG, Deceased; WENDY MACADANGDANG, Individually, and *as Guardian ad Litem for* SIERRA MACADANGDANG, a Minor, JORDAN DON LEBIE, an Individual; CINDY LEBIE, an Individual; DONALD LEBIE, an Individual, ) ) ) ) ) ) ) ) Defendants. ) ) | Case No.: 2:09-cv-2070-GMN-RJJ **ORDER** |

**INTRODUCTION**

Before the Court is Plaintiff Encompass Insurance Company of America's ("Encompass") Motion for Summary Judgment (ECF No. 35). Three Defendants, Wendy Macadangdang, as Special Administrator of the Estate of Danny Macadangdang, deceased; Wendy Macadangdang, individually, and as Guardian ad Litem for Sierra Macadangdang, a minor (collectively "Macadangdangs") filed a Response (ECF No. 38). Plaintiff filed a Reply (ECF No. 39). This Court held a hearing on the motion on July 12, 2011 (ECF No. 44).

**FACTS AND BACKGROUND**

This is a declaratory relief action filed by Plaintiff to determine the coverage of an insurance policy. The insurance coverage action arises out of claims made by the Macadangdangs related to a motor vehicle accident involving Jordan Don Lebie and Danny Macadangdang, where Jordan was the driver and Danny was a passenger. The accident

resulted in significant injuries to Danny and ultimately his death.

On August 26, 2005, Danny's wife and daughter filed a lawsuit against Jordan's parents, Cindy Lebie and Jordan Don Lebie in state court. (Case No. A509128, *Macadangdang, et al., v. Lebie, et al.*)  In that action, the Macadangdangs sought damages for negligence, wrongful death, and punitive damages. (*See* Amended Complaint in Case No. A509128, Ex. A, ECF No. 35-1.)  In the non-jury bench trial the court found in favor of the Macadangdangs[1] but, no punitive damages were awarded. (*See* Amended Judgment in Case No. A509128, Ex. C, ECF No. 35-3).

The Lebies' Encompass automobile insurance policy ("Policy") provided liability limits of $100,000 "per person" and $300,000 "per occurrence".  Therefore, Encompass made the tender of the "per person" limit of $100,000 to the Macadangdangs to settle the underlying action. (Complaint, ¶29, ECF No. 1.)  However, the Macadangdangs refused the tender claiming they are entitled to the $300,000 "per occurrence" limits. (*Id.*)

Encompass filed this declaratory relief action seeking an order from this Court declaring that the total limit of the Policy was $100,000.  Before the Court is the instant motion for summary judgment seeking a declaration from the Court that there are no genuine issues of material fact and that as a matter of law the $100,000 "per person" policy limit applies to the Macadangdangs' claim against the Policy[2].  The only parties remaining are Encompass and the Macadangdangs because the Lebies and Encompass entered into a stipulation and order signed by this Court agreeing to the following:

/ / /

---

[1] The Macadangdangs originally sued Jordan, Don, and Cindy Lebie in the underlying action.  Cindy was dismissed from the underlying action. (*See* Order for Partial Summary Judgment, Ex. B, ECF No. 35-2.)

[2] Encompass further contends that the subject insurance policy does not provide coverage for punitive damages that were claimed by the Macadangdangs.  However the underlying action brought by the Macadangdangs did not result in any punitive damages being assessed.  (*See,* Ex. C, ECF No. 35-3.)  The parties agreed at the hearing that since the state court did not award punitive damages this Court does not need to determine if the punitive damages can be claimed by the Macadangdangs.

1. The subject policy provides coverage in the amount of the per person limits, only, i.e. $100,000, for the claims brought by the Macadangdangs against the Lebies; and,

2. Judgment be entered in favor of Encompass in the present action.

(*See,* Joint Stipulation and Order, ECF No. 22).

The Policy includes the following language which is at issue in this case:

**DEFINITIONS**

. . .

3. **Bodily Injury** means bodily harm, sickness or disease, including death resulting therefrom.

. . .

**LIMIT OF LIABILITY – PERSONAL LIABLITY**

1. The limit of liability shown in the Coverage Summary for "Bodily Injury Each Person" is our total limit of liability for damages because of *bodily injury* sustained by any one person in any one *motor vehicle accident*, including damages sustained by anyone else as a result of the *bodily injury.*

   Subject to this limit for each person, the limit of liability shown in the Coverage Summary for "Bodily Injury Each Accident" is our total limit of liability for all damages for *bodily injury* sustained by two or more persons in any one *motor vehicle accident*.

. . .

This is the most we will pay regardless of the number of:

   a. *Covered persons*;

   b. Claims or suits made;

   . . .

   c. Persons who sustain injury or damage.

(*See* Policy, Ex. E, ECF No. 35-5).

Also relevant is the portion of the policy which the Macadangdangs argue is ambiguous.

Under the "AMENDMENT OF MOTOR VEHICLE PROVISIONS – NEVADA BASIC VALUE" to the Policy, Section 2 provides:

> **2. LIMITS IN EXCESS OF FINANCIAL RESPONSIBILITY LIMITS – BODILY INJURY AND PROPERTY DAMAGE:**
>
> . . .
>
> Any claims for care, loss of services, loss of consortium and injury to any interpersonal relationship shall be included in the limit.

(*See Id.* Amendment, Ex. E-2, ECF No. 35-7, page 5.).

## DISCUSSION

### A. The Macadangdangs are Proper Parties

Before the Court looks at the merits of the Motion for Summary Judgment, the Court must address the Macadangdangs' argument in their Response that they are not a proper party to this suit. The Macadangdangs argue that since it is not an insured under the policy of liability insurance it should not be a party to this suit. The Court has considered the parties' pleadings and arguments at the hearing on this matter and concludes that the Macadangdangs are proper parties to this suit. Judge Jones denied the Macadangdangs' prior Motion to Dismiss and at the July 12, 2011 hearing, counsel for the Macadangdangs agreed and conceded that the issue of whether they were proper parties to the suit had already been decided by Judge Jones and while it had merit at the earlier stages of this case, the argument lacks merit at this time. Accordingly, the Court finds that the Macadangdangs are proper parties to this suit.

### B. Summary Judgment

#### 1. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the

movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[3]  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Interpretation of an insurance contract is a question of law. *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003).  "An insurance policy is a contract that must be enforced to its terms to accomplish the intent of the parties." *Id.*  Any ambiguity in an insurance policy should be interpreted against the drafting party, the insurer, and in favor of the insured. *Neumann v. Standard Fire Ins.*, 699 P.2d 101, 104 (1985)(citing *Yosemite Ins. Co. v. State Farm Mut. Auto. Ins.*, 653 P.2d 149 (1982).  However, unambiguous terms should not be rewritten. *Neal*, 64 P.3d

---

[3] Federal Rule of Civil Procedure 56 was recently amended, effective December 1, 2010. *See* Fed. R. Civ. P. 56 Advisory Committee Notes, 2010 Amendments.  The standard for granting summary judgment remains the same. *Id.*  Amendments to the Federal Rules of Civil Procedure govern proceedings that are pending at the time the amendments become effective, as long as the Supreme Court does not specify otherwise and the application would not be infeasible or work an injustice. Fed. R. Civ. P. 86(a)(2).  Here, to prevent against any injustice to the parties, the Court will apply the language of Rule 56 that was in use prior to the new December 1, 2010 amendments.  This earlier language was the language that was applicable when the Motion for Summary Judgment was filed, and when the Response and Reply were submitted and, therefore, would be the most apt language to apply.

at 473. "An insurance policy is to be judged from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1382 (1984).

**2. Analysis**

Encompass argues that the Macadangdangs are only entitled to the "per person" policy limit of $100,000. Encompass argues that the Nevada Supreme Court has determined that "per person" limits apply in scenarios such as this, where the additional plaintiffs' claims are wholly derivative of an injured party. *See Nationwide v. Moya*, 837 P.2d 426 (Nev. 1992).

In *Nationwide*, the insured sustained injuries in a car accident caused by a drunk driver, which ultimately resulted in her death. *Id.* at 427. The insured's survivors sought the "each occurrence" limit under an uninsured motorist provision of the insured's automobile policy. *Id.* The pertinent policy provisions provided that "bodily injury" included "bodily injury, sickness, disease, or death" and payments under the policy were limited such that "[b]odily injury limits shown for any one person are for all legal damages, including care or loss of services claimed to anyone for bodily injury to one person as a result of one occurrence." *Id.*, at 427-28. The survivors argued that their grief and sorrow amounted to a claim of "sickness" under the "bodily injury" definition in the policy so that their wrongful death claims were independent in nature and did not fall within the "each person" limits of the policy. *Id.* at 428-29.

The Nevada Supreme Court in the *Nationwide* case was not persuaded by the survivors' arguments. The court determined that "sickness" referred to the "sickness or disease contracted by the insured injured in the accident." *Id.* The court adopted the view that "damages for . . . wrongful death – resulting from 'bodily injury' to one person – are subject to the 'each person' limit and held that "where one person is injured in an accident, the each person limit applied, regardless of the number of persons damaged as a result of the accident. *Id.* at 430.

Encompass argues that the per person limits apply to the Macadangdangs' claims in this

case because only Danny Macadangdang suffered "bodily injury" in the accident and Wendy and Sierra Macadangdang were not involved in the subject accident; Wendy and Sierra's claims resulted from the "bodily injury" suffered by Danny. Encompass also argues that their policy's definition of "bodily injury" includes "sickness," but does not extend to grief or sorrow. Moreover, the Policy restricts compensation for all damages resulting from an individual's bodily injuries to the per person limits of $100,000. *See*, Exhibit "E".

The Macadangdangs argue that the insurance contract is ambiguous and therefore should be construed in their favor. In support of this argument the Macadangdangs point to the section of the policy entitled "AMENDMENT OF MOTOR VEHICLE PROVISIONS – NEVADA BASIC VALUE" (*See* Exhibit E-2). Under this heading, Section 2 provides:

> 2. LIMITS IN EXCESS OF FINANCIAL RESPONSIBILITY LIMITS – BODILY INJURY AND PROPERTY DAMAGE:
>
> . . .
>
> "Any claims for care, loss of services, loss of consortium and injury to any interpersonal relationship shall be included in the limit."

The Macadangdangs argue that this language means the term "bodily injury" includes "any claims for care, loss of services, loss of consortium and injury and to any interpersonal relationship." Thus, the "per occurrence" limit of $300,000 is applicable to this case because there are damages for bodily injury sustained by two or more persons. (*See* Exhibit E-2).

The Court has reviewed the Encompass Policy and finds that while there could be some ambiguity in the policy, the interpretation favored by the Defendants is not reasonable. The Macadangdangs point to one clause in the insurance policy. However, this clause must be read in context and in conjunction with the "Limit of Liability" section of the Policy which states, "'Bodily Injury Each Person' is [the] total limit of liability for damages because of *bodily injury sustained by any one person in any one motor vehicle accident.*" The phrase the

Macadangdangs rely upon merely appears to clarify that the person physically injured in the accident can also present claims for a loss of consortium and injury to any interpersonal relationship, etc. in his or her claim against the policy. The mention of those types of damages (loss of consortium and injury and to any interpersonal relationship) in the Policy does not create a new separate policy claim nor separate coverage under the policy for loss of consortium or loss of relationship for someone other than the person who was physically present and injured in the accident at issue.

Moreover, under Nevada law it is clear that "where one person is injured in the accident, the each person limit applied, regardless of the number of persons damaged as a result of the accident." *Nationwide*, 837 P.2d at 439. The language of this Policy is very similar to the language in the *Nationwide* policy. Although two additional people were certainly damaged as a result of this tragic accident, only Danny Macadangdang was injured under the language of the policy. Accordingly, the Court finds that there are no genuine issues of material fact to be addressed and that as a matter of law the "per person" limit not the "per occurrence" limit applies to the Macadangdangs' claims against the insurance policy.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff Encompass Insurance Company of America's ("Encompass") Motion for Summary Judgment (ECF No. 35) is **GRANTED**.

The Policy issued by Encompass to Cindy and Donald Lebie provides only the $100,000.00 per person limits for the Macadangdang claims.

**IT IS FURTHER ORDERED** that judgment should be entered in favor of Encompass and against the Macadangdangs.

DATED this 12th day of July, 2011.

_____
Gloria M. Navarro
United States District Judge