1

2

3

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

4  ENCOMPASS INSURANCE COMPANY OF )     Case No.: 2:09-cv-2070-GMN-RJJ
    AMERICA, )

5      )          **AMENDED ORDER**
             Plaintiff, )

6    vs. )     This **AMENDS** ECF 45, filed on
            )     07/13/2011, as follows:  On page 5,

7 WENDY MACADANGDANG *as Special* )     line 1, **at** Fed. R. Civ. P. 56(c)(2)[3]**,**
  *Administrator on behalf of the Estate of* DANNY )     **"n.[3]" has been deleted**.

8 MACADANGDANG, Deceased; WENDY )

9 MACADANGDANG, Individually, and *as Guardian* )
  *ad Litem for* SIERRA MACADANGDANG, a Minor, )

10 JORDAN DON LEBIE, an Individual; CINDY )
  LEBIE, an Individual; DONALD LEBIE, an )

11 Individual, )
            )

12          Defendants. )

13                 )

14                 **INTRODUCTION**

15      Before the Court is Plaintiff Encompass Insurance Company of America's

16 ("Encompass") Motion for Summary Judgment (ECF No. 35).  Three Defendants, Wendy

17 Macadangdang, as Special Administrator of the Estate of Danny Macadangdang, deceased;

18 Wendy Macadangdang, individually, and as Guardian ad Litem for Sierra Macadangdang, a

19 minor (collectively "Macadangdangs") filed a Response (ECF No. 38).  Plaintiff filed a Reply

20 (ECF No. 39).  This Court held a hearing on the motion on July 12, 2011 (ECF No. 44).

21              **FACTS AND BACKGROUND**

22      This is a declaratory relief action filed by Plaintiff to determine the coverage of an

23 insurance policy.  The insurance coverage action arises out of claims made by the

24 Macadangdangs related to a motor vehicle accident involving Jordan Don Lebie and Danny

25 Macadangdang, where Jordan was the driver and Danny was a passenger.  The accident

1   resulted in significant injuries to Danny and ultimately his death.

2        On August 26, 2005, Danny's wife and daughter filed a lawsuit against Jordan's parents,

3   Cindy Lebie and Jordan Don Lebie in state court. (Case No. A509128, *Macadangdang, et al.,*

4   *v. Lebie, et al.*)  In that action, the Macadangdangs sought damages for negligence, wrongful

5   death, and punitive damages. (*See* Amended Complaint in Case No. A509128, Ex. A, ECF No.

6   35-1.)  In the non-jury bench trial the court found in favor of the Macadangdangs[1] but, no

7   punitive damages were awarded. (*See* Amended Judgment in Case No. A509128, Ex. C, ECF

8   No. 35-3).

9        The Lebies' Encompass automobile insurance policy ("Policy") provided liability limits

10  of $100,000 "per person" and $300,000 "per occurrence".  Therefore, Encompass made the

11  tender of the "per person" limit of $100,000 to the Macadangdangs to settle the underlying

12  action. (Complaint, ¶29, ECF No. 1.)  However, the Macadangdangs refused the tender

13  claiming they are entitled to the $300,000 "per occurrence" limits. (*Id.*)

14       Encompass filed this declaratory relief action seeking an order from this Court declaring

15  that the total limit of the Policy was $100,000.  Before the Court is the instant motion for

16  summary judgment seeking a declaration from the Court that there are no genuine issues of

17  material fact and that as a matter of law the $100,000 "per person" policy limit applies to the

18  Macadangdangs' claim against the Policy[2].  The only parties remaining are Encompass and the

19  Macadangdangs because the Lebies and Encompass entered into a stipulation and order signed

20  by this Court agreeing to the following:

21  / / /

22

---

23  [1] The Macadangdangs originally sued Jordan, Don, and Cindy Lebie in the underlying action.  Cindy was dismissed from the underlying action. (*See* Order for Partial Summary Judgment, Ex. B, ECF No. 35-2.)

24  [2]  Encompass further contends that the subject insurance policy does not provide coverage for punitive damages that were claimed by the Macadangdangs.  However the underlying action brought by the Macadangdangs did not result in any

25  punitive damages being assessed.  (*See,* Ex. C, ECF No. 35-3.) The parties agreed at the hearing that since the state court did not award punitive damages this Court does not need to determine if the punitive damages can be claimed by the Macadangdangs.

1.  The subject policy provides coverage in the amount of the per person limits, only, i.e. $100,000, for the claims brought by the Macadangdangs against the Lebies; and,

2.  Judgment be entered in favor of Encompass in the present action.

(*See,* Joint Stipulation and Order, ECF No. 22).

The Policy includes the following language which is at issue in this case:

**DEFINITIONS**

. . .

3.      **Bodily Injury** means bodily harm, sickness or disease, including death resulting therefrom.

. . .

**LIMIT OF LIABILITY – PERSONAL LIABLITY**

1.      The limit of liability shown in the Coverage Summary for "Bodily Injury Each Person" is our total limit of liability for damages because of ***bodily injury*** sustained by any one person in any one ***motor vehicle accident***, including damages sustained by anyone else as a result of the ***bodily injury.***

Subject to this limit for each person, the limit of liability shown in the Coverage Summary for "Bodily Injury Each Accident" is our total limit of liability for all damages for ***bodily injury*** sustained by two or more persons in any one ***motor vehicle accident***.

. . .

This is the most we will pay regardless of the number of:

a.      ***Covered persons***;

b.      Claims or suits made;

. . .

c.      Persons who sustain injury or damage.

(*See* Policy, Ex. E, ECF No. 35-5).

Also relevant is the portion of the policy which the Macadangdangs argue is ambiguous.

Under the "AMENDMENT OF MOTOR VEHICLE PROVISIONS – NEVADA BASIC

VALUE" to the Policy, Section 2 provides:

> **2.      LIMITS IN EXCESS OF FINANCIAL RESPONSIBILITY**
> **LIMITS – BODILY INJURY AND PROPERTY DAMAGE:**
>
> . . .
>
> Any claims for care, loss of services, loss of consortium and injury to any interpersonal
> relationship shall be included in the limit.

(*See Id.* Amendment, Ex. E-2, ECF No. 35-7, page 5.).

## DISCUSSION

**A.      The Macadangdangs are Proper Parties**

Before the Court looks at the merits of the Motion for Summary Judgment, the Court

must address the Macadangdangs' argument in their Response that they are not a proper party

to this suit.  The Macadangdangs argue that since it is not an insured under the policy of

liability insurance it should not be a party to this suit.  The Court has considered the parties'

pleadings and arguments at the hearing on this matter and concludes that the Macadangdangs

are proper parties to this suit. Judge Jones denied the Macadangdangs' prior Motion to Dismiss

and at the July 12, 2011 hearing, counsel for the Macadangdangs agreed and conceded that the

issue of whether they were proper parties to the suit had already been decided by Judge Jones

and while it had merit at the earlier stages of this case, the argument lacks merit at this time.

Accordingly, the Court finds that the Macadangdangs are proper parties to this suit.

**B.      Summary Judgment**

**1.      Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine issue as to any material fact and that the

1  movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Material facts are

2  those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

3  242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

4  reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is

5  inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party,

6  could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521

7  F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04

8  (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of

9  factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

10      At summary judgment, a court's function is not to weigh the evidence and determine the

11  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

12  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

13  in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

14  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

15      Interpretation of an insurance contract is a question of law. *Farmers Ins. Exch. v. Neal*,

16  64 P.3d 472, 473 (Nev. 2003).  "An insurance policy is a contract that must be enforced to its

17  terms to accomplish the intent of the parties." *Id.*  Any ambiguity in an insurance policy should

18  be interpreted against the drafting party, the insurer, and in favor of the insured. *Neumann v.*

19  *Standard Fire Ins.*, 699 P.2d 101, 104 (1985)(citing *Yosemite Ins. Co. v. State Farm Mut. Auto.*

20  *Ins.*, 653 P.2d 149 (1982).  However, unambiguous terms should not be rewritten. *Neal*, 64 P.3d

21  at 473.  "An insurance policy is to be judged from the perspective of one not trained in law or

22  in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense."

23  *Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1382 (1984).

24      **2.      Analysis**

25       Encompass argues that the Macadangdangs are only entitled to the "per person" policy

1   limit of $100,000.  Encompass argues that the Nevada Supreme Court has determined that "per

2   person" limits apply in scenarios such as this, where the additional plaintiffs' claims are wholly

3   derivative of an injured party. *See Nationwide v. Moya*, 837 P.2d 426 (Nev. 1992).

4         In *Nationwide*, the insured sustained injuries in a car accident caused by a drunk driver,

5   which ultimately resulted in her death. *Id.* at 427.  The insured's survivors sought the "each

6   occurrence" limit under an uninsured motorist provision of the insured's automobile policy. *Id.*

7   The pertinent policy provisions provided that "bodily injury" included "bodily injury, sickness,

8   disease, or death" and payments under the policy were limited such that "[b ]odily injury limits

9   shown for any one person are for all legal damages, including care or loss of services claimed

10   to anyone for bodily injury to one person as a result of one occurrence." *Id.,* at 427-28.  The

11   survivors argued that their grief and sorrow amounted to a claim of "sickness" under the

12   "bodily injury" definition in the policy so that their wrongful death claims were independent in

13   nature and did not fall within the "each person" limits of the policy. *Id.* at 428-29.

14         The Nevada Supreme Court in the *Nationwide* case was not persuaded by the survivors'

15   arguments.  The court determined that "sickness" referred to the "sickness or disease contracted

16   by the insured injured in the accident." *Id.*  The court adopted the view that "damages for . . .

17   wrongful death – resulting from 'bodily injury' to one person – are subject to the 'each person'

18   limit and held that "where one person is injured in an accident, the each person limit applied,

19   regardless of the number of persons damaged as a result of the accident. *Id.* at 430.

20         Encompass argues that the per person limits apply to the Macadangdangs' claims in this

21   case because only Danny Macadangdang suffered "bodily injury" in the accident and Wendy

22   and Sierra Macadangdang were not involved in the subject accident; Wendy and Sierra's claims

23   resulted from the "bodily injury" suffered by Danny.  Encompass also argues that their policy's

24   definition of "bodily injury" includes "sickness," but does not extend to grief or sorrow.

25

1   Moreover, the Policy restricts compensation for all damages resulting from an individual's

2   bodily injuries to the per person limits of $100,000. *See*, Exhibit "E".

3          The Macadangdangs argue that the insurance contract is ambiguous and therefore should

4   be construed in their favor.  In support of this argument the Macadangdangs point to the section

5   of the policy entitled "AMENDMENT OF MOTOR VEHICLE PROVISIONS – NEVADA

6   BASIC VALUE" (*See* Exhibit E-2).  Under this heading, Section 2 provides:

7          2.      LIMITS IN EXCESS OF FINANCIAL RESPONSIBILITY LIMITS – BODILY

8                  INJURY AND PROPERTY DAMAGE:

9          . . .

10          "Any claims for care, loss of services, loss of consortium and injury to any interpersonal
            relationship shall be included in the limit."
11

12   The Macadangdangs argue that this language means the term "bodily injury" includes "any

13   claims for care, loss of services, loss of consortium and injury and to any interpersonal

14   relationship."  Thus, the "per occurrence" limit of $300,000 is applicable to this case because

15   there are damages for bodily injury sustained by two or more persons. (*See* Exhibit E-2).

16          The Court has reviewed the Encompass Policy and finds that while there could be some

17   ambiguity in the policy, the interpretation favored by the Defendants is not reasonable.  The

18   Macadangdangs point to one clause in the insurance policy.  However, this clause must be read

19   in context and in conjunction with the "Limit of Liability" section of the Policy which states,

20   "'Bodily Injury Each Person' is [the] total limit of liability for damages because of *bodily*

21   *injury sustained by any one person in any one motor vehicle accident.*"  The phrase the

22   Macadangdangs rely upon merely appears to clarify that the person physically injured in the

23   accident can also present claims for a loss of consortium and injury to any interpersonal

24   relationship, etc. in his or her claim against the policy.  The mention of those types of damages

25   (loss of consortium and injury and to any interpersonal relationship) in the Policy does not

1  create a new separate policy claim nor separate coverage under the policy for loss of

2  consortium or loss of relationship for someone other than the person who was physically

3  present and  injured in the accident at issue.

4       Moreover, under Nevada law it is clear that "where one person is injured in the accident,

5  the each person limit applied, regardless of the number of persons damaged as a result of the

6  accident." *Nationwide*, 837 P.2d at 439.  The language of this Policy is very similar to the

7  language in the *Nationwide* policy.  Although two additional people were certainly damaged as

8  a result of this tragic accident, only Danny Macadangdang was injured under the language of

9  the policy.  Accordingly, the Court finds that there are no genuine issues of material fact to be

10  addressed and that as a matter of law the "per person" limit not the "per occurrence" limit

11  applies to the Macadangdangs' claims against the insurance policy.

12  ## CONCLUSION

13  **IT IS HEREBY ORDERED** that Plaintiff Encompass Insurance Company of

14  America's ("Encompass") Motion for Summary Judgment (ECF No. 35) is **GRANTED**.

15       The Policy issued by Encompass to Cindy and Donald Lebie provides only the

16  $100,000.00 per person limits for the Macadangdang claims.

17  **IT IS FURTHER ORDERED** that judgment should be entered in favor of Encompass

18  and against the Macadangdangs.

19  **DATED** this 1st day of February, 2012.

20  **NUNC PRO TUNC DATE:** July 12, 2011.

21

22  _____

23  Gloria M. Navarro
    United States District Judge

24

25